IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELO ARMENTI, | : | 1:12-cv-2039 |
| | : | |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| PENNSYLVANIA STATE SYSTEM | : | |
| OF HIGHER EDUCATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM and ORDER

### October 2, 2013

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Four (4) motions are presently before the Court: (1) Defendants Association of Pennsylvania State College and University Faculties and Michael J. Slavin's Motion to Dismiss (Doc. 68); (2) Defendant Pennsylvania State System of Higher Education's Motion to Dismiss (Doc. 73); (3) Defendant Board of Governors of the Pennsylvania State System of Higher Education's Motion to Dismiss (Doc. 74); and (4) Defendants Ron Tomalis, John Cavanaugh, Guido Pichini, Marie Conley, and Ronald Henry's Motion to Dismiss (Doc. 76).

For the reasons set forth below, (1) Defendants Association of Pennsylvania State College and University Faculties and Michael J. Slavin's Motion to Dismiss

shall be denied, (2) Defendant Pennsylvania State System of Higher Education's

Motion to Dismiss shall be granted, (3) Defendant Board of Governors of the

Pennsylvania State System of Higher Education's Motion to Dismiss shall be

granted, and (4) Defendants Ron Tomalis, John Cavanaugh, Guido Pichini, Marie

Conley, and Ronald Henry's Motion to Dismiss shall be granted in part and denied

in part.

## I.     FACTUAL BACKGROUND[1]

Defendant Pennsylvania State System of Higher Education ("PASSHE") is

an agency of the Commonwealth of Pennsylvania responsible for governing the

Commonwealth's fourteen (14) public universities.[2]  (Doc. 67 ¶ 16).  The agency is

overseen by a Board of Governors ("Board") comprised of twenty (20) individuals

who are tasked with appointing the chancellor, employing university presidents,

and establishing education, fiscal, and personnel policies.  (Doc. 67 ¶ 17).

Defendant Ron Tomalis was, at the time of the filing of Plaintiff's Second

---

[1] In accordance with the applicable standard of review, the following facts are derived primarily from Plaintiff's Second Amended Complaint (Doc. 67) and viewed in the light most favorable to the Plaintiff.

[2] The fourteen universities governed by PASSHE are Bloomsburg University of Pennsylvania, California University of Pennsylvania, Cheyney University of Pennsylvania, Clarion University of Pennsylvania, East Stroudsburg University of Pennsylvania, Edinboro University of Pennsylvania, Indiana University of Pennsylvania, Kutztown University of Pennsylvania, Lock Haven University of Pennsylvania, Mansfield University of Pennsylvania, Millersville University of Pennsylvania, Shippensburg University of Pennsylvania, Slippery Rock University of Pennsylvania, and West Chester University of Pennsylvania.

Amended Complaint, the Secretary of the Pennsylvania Department of Education and an *ex officio* member of the Board.  (Doc. 67 ¶ 18).  Defendant John Cavanaugh is PASSHE's chief executive and is responsible for the day-to-day administration of PASSHE.  (Doc. 67 ¶ 19).  Defendant Guido Pichini was Chairman of the Board at all relevant times.  (Doc. 67 ¶ 20).  Defendant Marie Conley is or was a Board member and assisting in conducting the proceedings at issue.  (Doc. 67 ¶ 21).  Defendant Ronald Henry is or was Chair of the Board's Audit Committee.  (Doc. 67 ¶ 22).  Plaintiff Angelo Armenti was employed by PASSHE's Board and served as the President of California University of Pennsylvania ("California University") from 1992 until his termination in 2012. (Doc. 67 ¶ 15).

During Armenti's tenure at California University, he was employed by PASSHE under a series of employment contracts.  At all times relevant to this action, he was employed under an "Amendment to Employment Agreement" creating a term of employment from July 1, 2010 to June 30, 2014, with a prospect for an extension following a performance evaluation in 2012.  (Doc. 67 ¶ 32). Board policy requires that PASSHE university presidents undergo a performance evaluation annually, but the Board only conducted annual reviews in five (5) of Armenti's final ten (10) years at California University.  (Doc. 67 ¶¶ 33, 34).  Prior

to 2012, the Board has unanimously voted in favor of each of Armenti's contract extensions.  (Doc. 67 ¶ 35).

Beginning in 2008 and continuing for several years, Armenti performed academic research into demographic trends and legislative priorities, accumulating evidence of declining support and funding for public higher education in Pennsylvania.  (Doc. 67 ¶ 40).  Armenti subsequently became outspoken on what he considered to be a legislative trend toward the rapid privatization of public higher education.  (Doc. 67 ¶ 41).  He authored papers and made presentations in which he was sharply critical of PASSHE's policy decisions which he believes undermined PASSHE's statutory mission and placed undue financial pressures on Pennsylvania's public universities and their students.  (Doc. 67 ¶ 42).  Armenti also spoke in opposition to PASSHE policies which he believed resulted in higher student loan debt for students of limited means while providing students of ample means with unneeded state subsidies.  (Doc. 67 ¶ 43).  He presented these findings and opinions at various conferences, including three hosted by the City University of New York in 2008, 2010, and 2011.  (Doc. 67 ¶ 45).

Armenti alleges that key PASSHE leaders were concerned about his message and that the Chancellor discouraged him from presenting his opinions about PASSHE policies.  (Doc. 67 ¶¶ 46-48).  On one occasion, the Board's former

4

chair, Ken Jarin, was critical of Armenti for submitting an op-ed piece to the

*Pittsburgh Post-Gazette* in which Armenti criticized PASSHE's "low tuition for

all" policy as saddling disadvantaged students with high debt while providing

unnecessary subsidies to wealthy students.  (Doc. 67 ¶ 49).

In the latter half of 2011, Armenti worked with PASSHE on a furlough plan

as a means of controlling costs in the face of budgetary constraints.  (Doc. 67 ¶ 53).

During the planning phases of the manager furlough plan, Armenti was supported

by the Chancellor, PASSHE legal counsel, and the Board.  (Doc. 67 ¶ 54).  On

October 6, 2011, the Board adopted "Policy 2011-02: Nonrepresented Employee

Severance Program" to facilitate the furloughs.  (Doc. 67 ¶ 54).  Armenti

announced the furlough plan, involving the furlough of ten non-union managers,

on January 24, 2012 and it was reported in California University's internal

newspaper, *The California Journal*, on February 6, 2012.  (Doc. 67 ¶ 55).

Armenti's announcement of the furlough plan occurred two weeks before the

Governor's budget address.  (Doc. 67 ¶ 59).

On February 7, 2012, PASSHE sent a team of three auditors and a

supervisor to California University to perform an audit regarding unspecified

allegations after receiving several anonymous complaints.  (Doc. 67 ¶¶ 50, 51).

The audit was ordered by the Chancellor and managed by Ronald Henry, Chair of

the Board's Audit Committee.  (Doc. 67 ¶ 51).  On February 8, despite the

previous arrangement with PASSHE, Vice Chancellor Gary Dent contacted

Armenti and related that certain Board members, specifically Marie Conley, were

concerned with the timing of the furlough plan.  (Doc. 67 ¶¶ 56, 57).  Dent told

Armenti that he didn't think the furlough should go forward because it had the

public appearance of being in response to the Governor's announced budget cuts to

PASSHE.  (Doc. 67 ¶ 60).  Armenti responded by notifying the Chancellor's office

that he would proceed with the furloughs as planned unless he received something

in writing directing him otherwise.  (Doc. 67 ¶ 61).  The Chancellor responded

with an email stating that "after consultation with the Board, I am verifying that

you are to take no personnel action without explicit approval from me or my staff

until further notice."  (Doc. 67 ¶ 61).

On March 21, 2012, after receiving the Chancellor's email, Armenti

submitted a formal complaint against the Chancellor to the Board and contacted

Chairman Pichini to schedule a meeting to discuss the complaint.  (Doc. 67 ¶¶ 63-

66).  The complaint raised issues of abuse and mismanagement by the Chancellor

and acts of suppression of and retaliation for Armenti's speech.  (Doc. 67 ¶ 63).

On March 23, 2012, Armenti and California University Trustee Chair Robert Irey

attended a meeting with PASSHE officials, including PASSHE chief counsel Leo

Pandeladis, Chairman Pichini, and Vice Chairman Conley, to address the complaint. (Doc. 67 ¶ 67). During that meet, Pandeladis indicated that PASSHE had appointed a special investigator to review Armenti's complaint. (Doc. 67 ¶ 68). Also during the meeting on March 23, 2012, Vice Chairman Conley stated that the Board had cancelled Armenti's contract evaluation and triannual performance review, suggesting that it "could not go forward" because he "filed a complaint against Chancellor Cavanaugh." (Doc. 67 ¶ 71). On May 8, 2012, Armenti provided the appointed special investigator with additional complaints regarding the Chancellor's conduct, but the investigator took no action and did not request any supplemental information. (Doc. 67 ¶ 70).

Earlier, on February 9, 2012, chief auditor Dean Weber had concluded the audit and gave an exit interview with Armenti and other California University administrators in which he indicated that his most serious finding concerned "employees attending expensive conferences." (Doc. 67 ¶ 77). On March 8, 2012, Chancellor Cavanaugh met with Armenti and Irey for three hours as part of Armenti's performance evaluation. Irey conveyed to the Chancellor that the Trustees' position was that Armenti's contract should be extended. The audit was not mentioned at that meeting. (Doc. 67 ¶ 78). On March 20, 2012, the audit was circulated internally within PASSHE without allowing Armenti a chance a

respond.  (Doc. 67 ¶ 83).

In early April 2012, Armenti began to receive multiple phone calls indicating that "there were rumors all over campus that he would step down or be fired by the end of the week" and that he was "in trouble with Governor Corbett for intruding on his budget message."  (Doc. 67 ¶¶ 87, 88).  On April 4, 2012, Dr. Michael Slavin, a California University professor and president of the local Association of Pennsylvania State College and University Faculties ("APSCUF") union chapter at the university, announced at a departmental meeting that "Armenti will be forced to step down or be fired by the end of the week."  (Doc. 67 ¶ 89). On April 5, 2012, Slavin and APSCUF distributed, to the Chancellor, PASSHE Board, and California University Trustees, faculty, coaches, managers, and the media, a seventeen (17) page document containing allegedly false claims regarding Armenti's governing of the campus.  (Doc. 67 ¶ 92).  Armenti drafted a response to the APSCUF document and emailed it to Chairman Pichini, who concealed the response and did not share it with the Board.  (Doc. 67 ¶ 93).

On April 6, 2012, California University Trustee Larry Maggi contacted Armenti to tell him that a reporter for the *Observer-Reporter* newspaper called and asked "if Armenti stepped down or had been fired that day."  (Doc. 67 ¶ 95). Plaintiff believes that PASSHE "leaked" information to the media concerning their

plan to terminate him, because that reporter, Scott Beveridge, was a longtime friend of Kenn Marshall, PASSHE's media spokesman.  (Doc. 67 ¶ 95).

On May 4, 2012, PASSHE published notice of a special meeting of the Board's Executive Committee to be held on May 9, 2012 to "discuss personnel matters."  (Doc. 67 ¶ 96).  On May 9, 2012, despite a lack of quorum, a four hour long closed-door meeting was held in which Chairman Pichini was authorized to "take whatever action necessary with Armenti."  (Doc. 67 ¶ 98).  The next day, PASSHE's legal counsel, Pandeladis, telephoned Armenti to advise him that PASSHE intended to release the internal audit by the end of the day, pursuant to a Right to Know Request filed by a local newspaper.  (Doc. 67 ¶ 99).  Armenti told Pandeladis that he would provide his "rebuttal to the audit" to PASSHE for release at that time.  (Doc. 67 ¶ 99).  Shortly thereafter, Pandeladis called Armenti again to inform him that PASSHE had instead opted to decline the Right to Know Request and would not be releasing the audit report.  (Doc. 67 ¶ 100).  It is Plaintiff's belief that PASSHE chose not to comply with the Right to Know Request because it did not want Armenti's rebuttal to be released along with the audit report.  (Doc. 67 ¶ 100).

On May 16, 2012, Chairman Pichini met with Armenti in Harrisburg and demanded that Armenti retire or face termination.  (Doc. 67 ¶¶ 101, 103).  Armenti

refused to retire.  (Doc. 67 ¶ 102).  Pichini then informed Armenti that he was "terminated because of turmoil on the Cal U campus" and provided a brief termination letter.  (Doc. 67 ¶ 104).  Pandeladis informed Armenti that he was being terminated "without cause."  (Doc. 67 ¶ 106).  On May 17, 2012, PASSHE released the internal audit report, which contained allegations that Armenti had engaged in "unlawful acts" equivalent to "money laundering."  (Doc. 67 ¶ 112).  At this time, Armenti was prohibited from accessing his office or electronic files, and was unable to distribute any rebuttal or response.  (Doc. 67 ¶ 113).  Plaintiff alleges that PASSHE and its officials conspired with Audit Chair Ron Henry and Chancellor Cavanaugh to create and release the audit report to falsely accuse Armenti of misconduct.  (Doc. 67 ¶ 116).

On May 25, 2015, the Board convened a meeting to ratify the Board Executive Committee's authorization to terminate Armenti.  (Doc. 67 ¶ 107).  On June 1, 2012, Chairman Pichini sent a letter to Armenti and the media advising that he was terminated "for cause."  (Doc. 67 ¶ 108).  This letter came after an out-of-court settlement of an injunction in the Washington County Court of Common Pleas requesting emergency relief from the PASSHE mandate preventing Armenti from accessing his office and files.  (Doc. 67 ¶ 109).  Prior to the commencement of that action, Armenti was told by PASSHE that if he were to initiate any legal

10

proceedings, his termination would be deemed "for cause."  (Doc. 67 ¶ 110).

PASSHE has never provided any basis for Armenti's termination.  (Doc. 67 ¶ 111).

## II.    PROCEDURAL HISTORY

Plaintiff filed his Complaint (Doc. 1) against all Defendants on October 10,

2012.  He filed an Amended Complaint (Doc. 48) on January 11, 2013.  He filed a

Second Amended Complaint (Doc. 67) on April 15, 2013.

On April 19, 2013, Defendants APSCUF and Michael J. Slavin filed a

Motion to Dismiss (Doc. 68) and brief in support thereof (Doc. 70).  Plaintiff filed

a brief in opposition (Doc. 86) on June 10, 2013 and the moving Defendants filed a

reply brief (Doc. 89) on June 21, 2013.

Defendant PASSHE filed a Motion to Dismiss (Doc. 73) on May 6, 2013

and a brief in support thereof (Doc. 81) on May 17, 2013.  Plaintiff filed a brief in

opposition (Doc. 83) on June 5, 2013 and PASSHE filed a reply brief (Doc. 88) on

June 20, 2013.

On May 6, 2013, Defendant Board of Governors of PASSHE filed a Motion

to Dismiss (Doc. 74) and a brief in support thereof (Doc. 75).  Plaintiff did not file

a brief in opposition.  Thus, the Board's motion is considered unopposed pursuant

to Middle District of Pennsylvania Local Rule 7.6.

Defendants Rom Tomalis, John Cavanaugh, Guido Pichini, Marie Conley,

and Ronald Henry filed a Motion to Dismiss (Doc. 76) on May 6, 2013 and a brief in support thereof (Doc. 82) on May 21, 2013.  Plaintiff filed a brief in opposition (Doc. 87) on June 10, 2013 and PASSHE filed a reply brief (Doc. 90) on June 24, 2013.  Thus, all four pending motions are fully briefed and ripe for disposition.

## III.   STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain

a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth"

and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679.  Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.*  Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief.  *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 588 n.8).  Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV.   DISCUSSION

Plaintiff's Second Amended Complaint contains nine counts.  Count One alleges "Violation of Plaintiff's Procedural Due Process Rights Under 42 U.S.C. § 1983: Property Interest in Continued Employment" against Defendants Tomalis, Cavanaugh, Pichini, Conley, and Henry, in their individual capacities.  Count Two alleges "Violation of Plaintiff's Substantive Due Process Rights Under 42 U.S.C. § 1983: Freedom of Speech" against Defendants Tomalis, Cavanaugh, Pichini, Conley, and Henry, in their individual capacities.  Count Three alleges "Violation

of Plaintiff's Due Process Rights Under 42 U.S.C. § 1983: Violation of Liberty

Interest in Reputation by Failing to Provide a Name-Clearing Hearing" against

Defendants PASSHE, Tomalis, Cavanaugh, Pichini, Conley, and Henry, in their

individual capacities.  Count Four alleges "Civil Conspiracy to Violate

Constitutional Rights" against Defendants PASSHE, Tomalis, Cavanaugh, Pichini,

Conley, and Henry, in their individual capacities. The next count, also labeled

Count Four, alleges "Violation of Pennsylvania's Whistleblower Law" against

Defendants PASSHE, Pichini, and Conley.  Count Five alleges Defamation against

Defendants Cavanaugh, Pichini, and Henry, in their individual capacities.  Count

Six alleges Breach of Contract against PASSHE.  Count Seven alleges Defamation

against Michael Slavin and APSCUF.  Count Eight alleges "Tortious Interference

With Contractual Relationship" against Michael Slavin and APSCUF.

### A.    Defendants Michael J. Slavin and APSCUF's Motion to Dismiss

Michael J. Slavin and APSCUF ("APSCUF Defendants") are named in

Counts Seven and Eight of Plaintiff's Second Amended Complaint.  Plaintiff

alleges that the document created and circulated by APSCUF Defendants contained

false information and was specifically intended to cause harm to Plaintiff's

reputation with the public and PASSHE officials.  Plaintiff believes that this

document was part of the "turmoil" on campus that was the purported basis for his

termination and was sent to PASSHE officials to persuade them to end Plaintiff's contract.  That document thus forms the basis for Counts Seven and Eight. APSCUF Defendants argue that both of these counts against them should be dismissed for failure to state a claim.

### 1.    Defamation

Count Seven alleges that APSCUF Defendants defamed Plaintiff by drafting and publishing a "manifesto" against him.  Pursuant to 42 Pa.C.S.A. § 8343(a), a plaintiff has the burden of proving seven elements to establish a prima facie case of defamation: (1) the defamatory nature of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication[3]; and (7) abuse of a conditionally privileged occasion. Actionable defamatory statements must be statements of purported fact, not merely expressions of opinion.  *See Dougherty v. Boyertown Times*, 547 A.2d 778, 782-83 (Pa. Super. 1988).  In addition to these statutory factors, a plaintiff also bears the burden of proving the falsity of an allegedly defamatory statement.  *See Dunlap v.*

---

[3] Despite this element's appearance in the statute, the requirement of special harm is not relevant here.  Pennsylvania has adopted Restatement (Second) of Torts § 569, which provides that all libels are actionable without proof of special harm.  *See Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 474 (Pa. Super. 1984).

*Philadelphia Newspapers, Inc.*, 448 A.2d 6 (Pa. Super. 1982).

Finally, in addition to these standard burdens, "[t]he constitutional guarantees [of freedom of speech and press] require ... a federal rule that prohibits public officers from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' - that is, with knowledge that it was false or reckless disregard of whether it was false or not." *Curran v. Philadelphia Newspapers, Inc.*, 546 A.2d 639, 642 (Pa. Super. 1988) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).  In the case before us now, the alleged libel relates to Plaintiff's official conduct as President of California University.  Therefore, Plaintiff must show "actual malice" in order to ultimately succeed on his claim.

The APSCUF Defendants argue that Plaintiff's defamation claim should be dismissed as failing to satisfy a number of the required elements described above. They contend that Plaintiff has not established the defamatory character of the communication in question, alleged facts showing that a recipient of the communication understood it to be defamatory, alleged facts demonstrating the existence of actual malice, or suffered any harm as a result of the communication. The APSCUF Defendants also argue as an affirmative defense that their communication was conditionally privileged.

17

In order to establish the defamatory character of a communication, a plaintiff must show that the statement in question tends to harm his reputation, lower him in the estimation of the community, or deter other persons from associating or dealing with him in a professional or business relationship. *See Dougherty*, 547 A.2d 778 at 783. Whether allegedly defamatory statements are capable of a "defamatory meaning" is determined preliminarily by the court. *Id*. So long as the challenged communication can reasonably be construed as defamatory, a prima facie showing of defamatory character is established. *Id*.

Here, Plaintiff alleges that APSCUF Defendants' "manifesto" against him contains accusations that he denied the union access to financial records and took retaliatory action by wrongfully terminating employees for personal reasons. (Doc. 67 ¶ 190) APSCUF Defendants claim that the content of their letter is mischaracterized, but because we do not at this time possess a copy of the document[4], we must assume for the present purpose that these allegations are true. As such, the alleged statements clearly appear to the Court to be capable of harming Plaintiff's reputation and deterring others from dealing with him in a professional or business relationship. Thus, Plaintiff has sufficiently alleged the

---

[4] Although APSCUF Defendants contend in their brief (Doc. 70 at 15) that a copy of the letter at issue was filed as Exhibit A to Plaintiff's Complaint (Doc. 1), we see no evidence of that in our review of the docket. Exhibit A, the sole exhibit attached to Plaintiff's original Complaint, appears to be a copy of Armenti's employment agreement with PASSHE.

existence of statements capable of a defamatory meaning.  Whether the recipients did indeed understand those statements to be defamatory is a question of fact for the jury.  *See Wilson v. Slatalla*, 970 F.Supp. 405, 415 (E.D. Pa. 1997) (citing *Corabi v. Curtis Pub. Co.*, 273 A.2d 899, 904 (Pa. 1971); *Rutt v. Bethlehem's Globe Pub. Co.*, 484 A.2d 72, 76 (Pa. Super. 1984)).

With regard to whether Plaintiff has alleged sufficient facts to support the element of actual malice, we find that he has.  As described above, malice in this context does not mean a subjective intent to cause harm, but rather knowledge of the statement's falsity or reckless disregard of whether it is false or not.  The APSCUF Defendants argue that actual malice has been alleged, but only through bald conclusions without factual support.  Although we agree that Plaintiff's allegations regarding this element are relatively insubstantial, we nevertheless find that the totality of Plaintiff's allegations is sufficient to create an inference of actual malice.  Because the element of actual malice goes to the subjective intent of the alleged defamers, it is exceedingly difficult for a plaintiff to plead specific non-conclusory facts beyond simply that the defamers knew the statement was false.  This element will be subject to a more exacting standard at the summary judgment phase, but Plaintiff's pleadings are sufficient to proceed to discovery.

APSCUF Defendants' arguments regarding conditional privilege and lack of

harm are similarly unpersuasive.  Conditional privilege does not apply when a defendant publishes a defamatory statement with actual malice.  *See American Future Systems, Inc. v. BBB*, 872 A.2d 1202, 1209-11 (Pa. Super. 2005).  Because we have found an adequate pleading of actual malice, we cannot say at this time that conditional privilege applies.  APSCUF Defendants claim that Plaintiff has alleged only that he suffered "embarrassment, humiliation[, and] irreparable damage to his reputation" but not any special damages.  (Doc. 67 ¶ 197).  As we noted previously, Pennsylvania law has long held that all libels are actionable without proof of special damages.  *See Sprague v. American Bar Association*, 276 F.Supp.2d 365, 369 (E.D. Pa. 2003) (citing *Walker v. Grant Central Sanitation, Inc.*, 634 A.2d 237, 243 (Pa. Super. 1993)).  Thus, APSCUF Defendants' argument on this point has no merit.

Because Plaintiff had adequately plead each of the required elements of defamation, we shall not dismiss Count Seven of his Second Amended Complaint. Of course, if Plaintiff has misquoted or mischaracterized APSCUF Defendants' statements such that his defamation claim is ultimately unsupported by the evidence, APSCUF Defendants may later move for summary judgment on these issues.

### 2.   Tortious Interference With Contractual Relationship

Count Eight alleges that APSCUF Defendants drafted and provided their "manifesto" to PASSHE and its officials with the specific intent of harming the existing contractual relationship between Plaintiff and PASSHE, and that as a result Plaintiff suffered actual damages by being terminated from employment.

In order to establish a prima facie case of tortious interference with a contractual relationship, a Plaintiff must allege four elements: (1) the existence of a contractual or prospective contractual relationship between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relationship or prevent a prospective relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual legal damages as a result of the defendant's conduct. *See Crevelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. 1997)).

Clearly the first element is met, as Armenti and PASSHE had a contractual agreement to provide for Armenti's employment as President of California University.  The APSCUF Defendants do not dispute that this agreement was a valid contractual relationship between the complainant and a third party.

We find that the second element, a purposeful action specifically intended to harm a contractual relationship or prevent one from occurring, has also been pled

sufficiently to survive a motion to dismiss.  Plaintiff has alleged that APSCUF

Defendants published to PASSHE's Board of Governors a document containing

defamatory statements regarding Plaintiff's performance as President of California

University.  We find therefore that Plaintiff's pleadings are sufficient to create an

inference that APSCUF Defendants did act purposefully with the intent of bringing

about the termination of Plaintiff's employment contract.

APSCUF Defendants argue that the third element is not present in Plaintiff's

pleadings, but we disagree.  Determining whether there was an absence of privilege

or justification involves inquiring as to the "mental and moral character of the

defendant's conduct" to determine whether the conduct was improper.  *Brownsville

Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 159 (3d Cir. 1988); *see

also American Bd. of Internal Medicine v. Von Muller*, 2011 WL 857337 at *5

(E.D. Pa. March 10, 2011).  Keeping in mind that we have already determined that

Plaintiff has alleged an absence of privilege or justification sufficient to allow his

defamation claim to survive the instant motion to dismiss, we similarly find that

Plaintiff has sufficiently pled this element of his tortious interference claim.

Finally, Plaintiff has pled actual legal damages, specifically the termination

of his employment contract with PASSHE.  Although Plaintiff has alleged several

other alleged reasons for his termination, including that members of PASSHE

ordered the audit of California University to create a pretext for his firing (Doc. 67 ¶ 86) and that he was fired due to "turmoil" on campus manufactured by other Defendants affiliated with PASSHE (Doc. 67 ¶¶ 104-105), he has also alleged that his firing was caused by APSCUF Defendants' actions.  Of course, any event may have multiple causes, so several allegations with regard to causation do not invalidate the claim.  Thus, we find that the fourth element has been met and that Plaintiff's Second Amended Complaint presents a prima facie case of tortious interference with a contractual relationship.

### B.     Defendant PASSHE Board of Governors' Motion to Dismiss

Defendant Board of Governors of the Pennsylvania State System of Higher Education has filed a Motion to Dismiss (Doc. 74) arguing that Plaintiff's Second Amended Complaint continues to list the PASSHE Board as a Defendant in this case despite none of the counts in the Second Amended Complaint being alleged against the Board.  The Board contends that, therefore, Plaintiff has failed to state a claim against the Board.  Plaintiff did not file a brief opposing the Board's motion and we see no reason not to grant the relief it seeks.  Consequently, the Board's motion shall be granted and the Board of Governors of the Pennsylvania State System of Higher Education shall be dismissed from the case.

### C.     Defendant PASSHE's Motion to Dismiss

Four counts in Plaintiff's Second Amended Complaint are alleged against PASSHE: (1) Count Three – Violation of Plaintiff's Due Process Rights Under 42 U.S.C. § 1983: Violation of Liberty Interest in Reputation by Failing to Provide a Name-Clearing Hearing; (2) Count Four – Civil Conspiracy to Violate Constitutional Rights; (3) Count Four[5] – Violation of Pennsylvania's Whistleblower Law; and (4) Count Six – Breach of Contract. PASSHE contends that each of these claims should be dismissed due to sovereign immunity and/or failure to state a claim upon which relief can be granted. Plaintiff has now conceded that PASSHE is immunized from suit in federal court on the due process, civil conspiracy, and Whistleblower Law claims. (Doc. 83 at 8-9). We agree that we lack jurisdiction over these claims and so they shall be dismissed. However, the parties continue to dispute whether Plaintiff has stated a valid claim for breach of contract.

PASSHE argues that Plaintiff's breach of contract claim must be dismissed because contractual claims against the Commonwealth of Pennsylvania and its agencies must be brought before the Pennsylvania Board of Claims. As a result, PASSHE contends that this Court lacks jurisdiction to hear the claim. Plaintiff

---

[5] As noted earlier, Plaintiff's Second Amended Complaint contains two counts labeled as "Count Four."

disagrees that exclusive jurisdiction lies with the Board of Claims.  In the

alternative, if we should find that we lack jurisdiction, Plaintiff asks us to transfer

the claim to the Board of Claims.

The Pennsylvania Legislature created the Board of Claims in 1937 and

granted it exclusive jurisdiction over all claims against the Commonwealth arising

from contracts entered into with the Commonwealth.  *See Com. v. Orsatti, Inc.*,

292 A.2d 313, 315-316 (Pa. 1972); 62 Pa.C.S. §§ 1721-1726.  There are many

cases supporting the proposition that the Board of Claims holds exclusive

jurisdiction over contract claims against the Commonwealth and its agencies.  *See,*

*e.g., Urella v. Pennsylvania Sate Troopers Ass'n*, 628 F.Supp.2d 600, 607 (E.D.

Pa. 2008) (holding that "jurisdiction over these claims is vested exclusively in the

Pennsylvania Board of Claims, and not this Court"); *Seeney v. Kavitski*, 866

F.Supp. 206, 210 (E.D. Pa. 1994) ("The Board of Claims has exclusive jurisdiction

over contract claims against the Commonwealth and its agencies."); *United*

*Brokers Mortg. Co. v. Fidelity Philadelphia Trust Co.*, 363 A.2d 817, 821 (Pa.

Cmwlth. 1976) ("... claims against the Commonwealth arising from contracts are

exclusively within the jurisdiction of the Board of Arbitration of Claims to the

extent the Legislature has waived sovereign immunity in creating said Board.").

Plaintiff's brief cites only one case: *Nahouraii v. Indiana University of*

25

*Pennsylvania*, 2012 WL 954645 (W.D. Pa. March 20, 2012).  The question in that case was whether the Western District possessed jurisdiction over a claim to enforce a settlement agreement when the underlying claims had "their genesis in the settlement of non-contractual, Title VII, federal litigation."  *Id.* at *5.  The court held that, although the settlement agreement was a contract with the Commonwealth, the agreement was "founded on" principles other than those based in contract law and was largely a continuation of the earlier suit and thus the court could continue to exercise jurisdiction over the case.

Here, the situation does not resemble the facts of *Nahouraii*.  This is not a dispute about the enforcement of the settlement agreement that resolved an earlier non-contract claim.  This is a claim for breach of contract against a Commonwealth agency based on the agency's failure to honor a specific provision of that contract.  The claim could not be more clearly "founded on" contract law principles.  Thus, we agree with PASSHE and the overwhelming force of precedent that the Board of Claims holds exclusive jurisdiction over Plaintiff's breach of contract claim.

Finally, we address Plaintiff's request that we transfer his claim directly to the Pennsylvania Board of Claims.  Absent statutory authority, the general rule is that a court may not transfer a matter over which it lacks jurisdiction.  *See Dantes v. Western Found. Corp. Ass'n*, 614 F.2d 299, 301 (1st Cir. 1980).  More

26

specifically, "[a] district court is powerless to transfer a case unless the court has subject matter jurisdiction over the action." *Tifa Ltd. v. Republic of Ghana*, 692 F.Supp. 393, 398 (D.N.J. 1988) (citing *Atlantic Ship Rigging Co. v. McLellan,* 288 F.2d 589 (3d Cir. 1961)).  Because we have determined that we lack subject matter jurisdiction over Plaintiff's breach of contract claim, we find that we cannot properly issue an order transferring that claim to a Commonwealth court or administrative board.  Therefore, we will simply dismiss the claim.

### D. Defendants Ron Tomalis, John Cavanaugh, Guido Pichini, Marie Conley, and Ronald Henry's Motion to Dismiss

Six counts in Plaintiff's Second Amended Complaint are alleged against some or all of Defendants Tomalis, Cavanaugh, Pichini, Conley, and Henry (collectively referred to hereafter as "PASSHE Defendants"): (1) Count One - Violation of Plaintiff's Procedural Due Process Rights Under 42 U.S.C. § 1983: Property Interest in Continued Employment; (2) Count Two - Violation of Plaintiff's Substantive Due Process Rights Under 42 U.S.C. § 1983: Freedom of Speech; (3) Count Three – Violation of Plaintiff's Due Process Rights Under 42 U.S.C. § 1983: Violation of Liberty Interest in Reputation by Failing to Provide a Name-Clearing Hearing; (4) Count Four - Civil Conspiracy to Violate Constitutional Rights; (5) Count Four - Violation of Pennsylvania's Whistleblower

Law; and (6) Count Five - Defamation.  We will address each of Plaintiff's six claims in turn.

### 1.    Property Interest in Continued Employment

To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of state law, violated his federal constitutional or statutory rights and caused some injury.  *See Sameric Corp. Of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).  In this case, Plaintiff contends that his protected property interest in continued employment was revoked without due process in violation of the Fourteenth Amendment.  PASSHE Defendants argue that Plaintiff was not entitled to continued employment and therefore has no property interest recognized by the Fourteenth Amendment's protection against deprivations "of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

To have a property interest in a job, a person must have more than a unilateral expectation of continued employment; there must be a legitimate entitlement to continued employment.  *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).  An at-will employee has no such legitimate entitlement because he "serves solely at the pleasure of [his] employer."  *Id.* (citing *Chabal v. Reagan*, 841

F.2d 1216, 1223 (3d Cir. 1988).  If a court determines that a public employee "held

his position at the will and pleasure of the [governmental entity]," such a finding

"necessarily establishes that he had no property interest."  *Bishop v. Wood*, 426

U.S. 341, 346 n. 8 (*overruled in part on other ground by Cleveland Bd. Of Educ. v.*

*Loudermill*, 470 U.S. 532, 540-41 (1985)).  An at-will government employee only

has a property interest in continued employment if his employment contract or

state law specifies that he may only be terminated for cause.  *See Wilson v. MVM,*

*Inc.*, 475 F.3d 166, 177 (3d Cir. 2007); *see also Karchak v. Swatara Twp.*, 540

F.Supp.2d 540, 549 (M.D.Pa. 2008).

Here, Plaintiff was an at-will employee of PASSHE.  His employment

contract with PASSHE states that "[t]he Board, at its discretion, may terminate

[Plaintiff's] employment, with or without cause."  (Doc. 67, Ex. A ).  Statutorily,

president of PASSHE institutions "serve at the [B]oard's pleasure under fixed

terms or contracts of fixed duration...."  24 P.S. 20-2006-A(a)(2).

Plaintiff argues that several of his allegations support an inference that,

despite the statutory and contractual language, there was in fact a mutually explicit

understanding of continued employment between himself and the Defendants.  We

disagree.  Plaintiff claims that a mutually explicit understanding was evident

because, prior to 2012, the Board chose to eschew multiple reviews of his job

performance, never disciplined him or took adverse action against him,  and

unanimously voted to extend his contract on all previous occasions.  (Doc. 67, ¶¶

26, 34-36).  Although these allegations suggest that the Board was satisfied with

Plaintiff's performance prior to 2012, prior contract extensions do not form the

basis for an explicit mutual understanding that future contract extensions would

continue to be granted in perpetuity.  Plaintiff has nowhere alleged that the

PASSHE Defendants represented to him in an explicit way that his contract was

going to be extended.[6]  Although the California University Council of Trustees and

its Chair, Robert Irey, recommended that Plaintiff's contract be extended, Plaintiff

has not pled the existence of any express or implied contract or mutual

understanding bestowing upon him a legitimate entitlement to continued

employment.  Plaintiff has not demonstrated that he had any entitlement to his job

implicating the due process clause of the Fourteenth Amendment.  Therefore, we

will dismiss Count One of his Second Amended Complaint.

### 2.    Substantive Due Process

Count Two of Plaintiff's Second Amended Complaint alleges a violation of

---

[6]  Page ten (10) of Plaintiff's opposition brief states that "PASSHE represented to
Plaintiff that his contract would be extended following his review," citing paragraph thirty-seven
(37) of his Second Amended Complaint (Doc. 67).  However, paragraph thirty-seven (37)
contains no such allegation. That paragraph, in its entirety, reads as follows: "Beginning in early
2012, the Board began Armenti's 'triennial review process.'"

Plaintiff's substantive due process rights, specifically his free speech rights under the First Amendment.  A non-legislative government deprivation "that comports with procedural due process may still give rise to a substantive due process claim 'upon allegations that the government deliberately and arbitrarily abused its power.'" *Independent Enters, Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165,1179 (3d Cir. 1997) (quoting *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 683 (3d Cir. 1991)).  "[T]he substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience.'" *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994)(en banc).  The substantive component of the Due Process Clause limits what the government may do regardless of the fairness of the procedures it employs.  *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000).

Here, Plaintiff's substantive due process claim fails because "claims governed by explicit constitutional text may not be grounded in substantive due process." *Nicholas v. Pa. State Univ.,* 227 F.3d 113, 143 n. 3 (3d Cir. 2000); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994).  Because Plaintiff's claim here is governed by explicit constitutional text, his claim that he was punished for exercising his free speech rights must be analyzed within the confines of the First

Amendment, not substantive due process.  Plaintiff's brief opposing the motion

does not argue against dismissal using the criteria of substantive due process, but

rather the criteria for a First Amendment retaliation claim.  The Second Amended

Complaint itself similarly supports Count Two by alleging elements of First

Amendment retaliation.  Therefore, although Plaintiff's substantive due process

claim will be dismissed for failure to state a claim, we will grant limited leave to

amend because Count Two's caption appears to be in error and is inconsistent with

the allegations contained within it.  Leave to amend is granted only to the extent

that Plaintiff shall be permitted to recast the count as a First Amendment retaliation

claim rather than a substantive due process claim.

### 3.      Liberty Interest in Reputation

Count Three of the Second Amended Complaint alleges that PASSHE

Defendants violated Plaintiff's due process rights, specifically his liberty interest in

his reputation, by failing to provide a name-clearing hearing.  The Supreme Court

had held that individuals have a protectable interest in reputation, saying that

"[w]here a person's good name, reputation, honor, or integrity is at stake because

of what the government is doing to him, notice and an opportunity to be heard is

essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).  However,

reputation alone is not an interest protected by the Due Process Clause.  *See*

*Versarge v. Township of Clinton, New Jersey*, 984 F.2d 1359, 1371 (3d Cir. 1993).

To present a cognizable claim for deprivation of a liberty interest in reputation, a

plaintiff must show (1) a stigma to his reputation and (2) deprivation of some

additional right or interest. *See Paul v. Davis*, 424 U.S. 693, 701 (1976). This is

referred to as the "stigma-plus" test. *See Graham v. City of Philadelphia*, 402 F.3d

139, 142 n. 2 (3d Cir. 2005).

In the public employment context, the "stigma-plus" test has been applied to

mean that an employee is deprived of a protected liberty interest when an employer

"creates and disseminates a false and defamatory impression about the employee in

connection with his termination." *Codd v. Velger*, 429 U.S. 624, 628 (1977). "The

creation and dissemination of a false and defamatory impression is the 'stigma,'

and the termination is the 'plus.' When such a deprivation occurs, the employee is

entitled to a name-clearing hearing." *Hill v. Borough of Kutztown*, 455 F.3d 225,

236 (3d Cir. 2006).

Here, it is clear that Plaintiff was terminated and therefore satisfies the

required "plus" factor. However, to satisfy the "stigma" prong of the test, a

plaintiff must show publication of  a substantially and materially false statement

that infringed upon the "reputation, honor, or integrity" of the employee. *Ersek v.*

*Township of Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996). Statements critical of

an employee's competence or job performance are not sufficiently stigmatizing to qualify. *See Kohn v. Sch. Dist. Of Harrisburg*, 817 F.Supp.2d 487, 498 (M.D.Pa. 2011).

Plaintiff has alleged that PASSHE released to the media a letter advising that he was terminated "for cause" but lacking any further explanation. (Doc. 67 ¶ 108). The mere fact that his termination was categorized as being "for cause" only indicates that his job performance was somehow lacking, which is not sufficiently stigmatizing to qualify under the "stigma-plus" test. However, Plaintiff also alleges (1) that PASSHE released an internal audit report the day after he was fired, indicating that he had engaged in unlawful acts, (2) that "certain PASSHE officials accused [him] of illegal conduct" and one Board member told a state representative "that [he] was the target of an FBI criminal investigation," and (3) that "Defendants have stated or implied that [he] acted dishonestly and/or unlawfully as President of California University of Pennsylvania." (Doc. 67 ¶¶ 112, 120, 141). Mindful of the difficulty any plaintiff in this type of situation faces in ascertaining the precise behind-the-scenes facts, such as which particular Defendant is responsible for a particular statement, we find that these allegations are sufficient to state a claim that is plausible on its face when construed in the light most favorable to the Plaintiff.

### 4.   Civil Conspiracy

Count Four of the Second Amended Complaint alleges that the PASSHE Defendants engaged in a civil conspiracy to violate Plaintiff's constitutional rights. As a practical matter, the Court recognizes that "direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances" and that "caution is advised in any pre-trial disposition of conspiracy allegations in civil rights actions." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184-85 (3d Cir. 2009) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990). Of course, allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action. In other words, to survive a motion to dismiss, a plaintiff must allege facts from which the Court can infer a conspiratorial agreement. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

Here, Plaintiff has alleged enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of conspiracy. Taken *in toto*, Plaintiffs Second Amended Complaint describes and alleges a circumstance which presents more than the sheer possibility of a conspiracy amongst the PASSHE Defendants. Plaintiff has alleged that the PASSHE Defendants agreed to

defame him, suspend his review, and terminate him and then did in fact

collectively take those actions as members of the Board.  Although Plaintiff's

allegations on these points are not overly specific, the Court recognizes that

conspirators rarely divulge the particulars of their conspiracy to their "target," and

so there is often a limit to the details a plaintiff can allege with great particularity

against the parties he believes conspired against him.  If Plaintiff's allegations lack

specificity due to lack of truth rather than merely lack of information, that

distinction will come to light through discovery and the Court will grant summary

judgment, satisfied that we have not shut the door on a plausible claim.  However,

at this stage of the proceedings, we will not dismiss Plaintiff's civil conspiracy

claim.

### 5. Whistleblower Law

Count Four[7] of the Second Amended Complaint alleges violation of

Pennsylvania's Whistleblower Law, 43 P.S. §§ 1421-1428, against Defendants

Pichini and Conley only.  Although the Second Amended Complaint does not

specify whether they are named in their individual or official capacities, Plaintiff

has clarified that the count is against Pichini and Conley in their individual

---

[7]  As noted previously, Plaintiff's civil conspiracy and Whistleblower Law claims are
both labeled as "Count Four."

capacities only.  (Doc. 87 at 20).

Pennsylvania's Whistleblower Law provides that "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee ... because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste."  43 P.S. § 1423(a).  The Whistleblower Law defines "wrongdoing" as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."  43 P.S. § 1422. "Waste: is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from the Commonwealth or political subdivision sources."  43 P.S. § 1422.

Here, Plaintiff has alleged that he filed a complaint against Chancellor Cavanaugh with the Board of Governors raising allegations of "abuses of power, fiscal mismanagement, and violations of policy and law."  (Doc. 67 ¶¶ 151, 152). He has alleged that his contract evaluation and triennial review was cancelled as a direct result of his filing of the complaint and that he was terminated less than two months later.  (Doc. 67 ¶¶ 71, 101-104).  Thus, Plaintiff has alleged that he

reported to the appropriate authority wrongdoing and/or waste as defined in the

Whistleblower Law statute and that he was terminated as a result.  Because

Plaintiff need only state facts that raise a right to relief above a speculative level at

this stage of the litigation, that is enough to survive a Rule 12(b)(6) motion and

Plaintiff's Whistleblower Law claim shall not be dismissed.

### 6.    Defamation

Finally, Count Five of Plaintiff's Second Amended Complaint alleges that

Plaintiff was defamed by Defendants Cavanaugh, Pichini, and Henry.  This claim

is based on the audit report which Plaintiff alleges contains false and defamatory

material and is against Defendants Cavanaugh, Pichini, and Henry in their

individual capacities only.  PASSHE Defendants argue that Count Five must be

dismissed because they are entitled to state-law sovereign immunity for intentional

torts in both their official and individual capacities.

Under Pennsylvania law, the Commonwealth, including its officials and

employees acting in the scope of their duties, are immune from suit except where

the General Assembly has specifically waived that immunity.  1 Pa.C.S. § 2310.

There only exceptions are claims for damages caused by (1) vehicle liability; (2)

medical-professional liability; (3) care, custody, or control of personal property;

(4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other

dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  42 Pa.C.S. § 8522.  Clearly none of those exceptions apply here.  Immunity from suit for intentional torts is enjoyed by Commonwealth employees in both their official and individual capacities, so long as the relevant conduct was within the scope of their duties.  *See Mitchell v. Luckenbill*, 680 F.Supp.2d 672, 682 (M.D.Pa. 2010).  Thus the validity of Plaintiff's claim turns on the question of whether Defendants Cavanaugh, Pichini, and Henry were acting in the scope of their duties when the alleged defamation occurred.

Plaintiff therefore contends, as he must, that Defendants Cavanaugh, Pichini, and Henry defamed him while acting outside the scope of their duties.  It seems clear to the Court, and Plaintiff does not strenuously argue otherwise, that Cavanaugh, Pichini, and Henry were acting within the scope of their duties to whatever extent they participated in the production and official release of the audit report at issue.  The report was performed for PASSHE by PASSHE's auditor and was eventually released to the public by PASSHE.  However, Plaintiff argues that the named Defendants took other actions outside the scope of their duties, specifically that they "selectively leaked defamatory information from the internally published audit report to the media, campus union leaders, and others on

campus, with the intent of damaging Plaintiff's reputation ... so his eventual termination would be accepted as legitimate ."  (Doc. 87 at 22).  However, Plaintiff's Second Amended Complaint contains no such allegation.  It only alleges that the Defendants "authorized the report's publication to the media and release to the public."  (Doc. 67 ¶ 166).  Because Plaintiff has not alleged that  Defendants Cavanaugh, Pichini, and Henry acted outside the scope of their duties in publicizing the audit report by leaking its allegedly defamatory statements to the media and others, Plaintiff has not stated a claim upon which relief can be granted. Consequently, we will grant PASSHE Defendants' motion as to Count Five. However, we will grant Plaintiff limited leave to amend only to the extent necessary to allege with particularity that Defendants Cavanaugh, Pichini, and Henry leaked defamatory information to the public prior to the audit report's official release.

## V.     CONCLUSION

For the foregoing reasons we shall deny APSCUF Defendants' motion, grant the Board of Governors' motion, grant PASSHE's motion, and grant in part and deny in part PASSHE Defendants' motion.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.     Defendants Association of Pennsylvania State College and University

Faculties and Michael J. Slavin's Motion to Dismiss (Doc. 68) is **DENIED**.

2. Defendant Board of Governors of the Pennsylvania State System of Higher Education's Motion to Dismiss (Doc. 74) is **GRANTED**.

3. Defendant Pennsylvania State System of Higher Education's Motion to Dismiss (Doc. 73) is **GRANTED**.

4. Defendants Ron Tomalis, John Cavanaugh, Guido Pichini, Marie Conley, and Ronald Henry's Motion to Dismiss (Doc. 76) is **GRANTED IN PART** and **DENIED IN PART** to the following extent:

   a. The Motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's procedural due process claim set out in Count One of the Second Amended Complaint;

   b. The Motion is further **GRANTED** to the extent it seeks dismissal of Plaintiff's substantive due process claim set out in Count II of the Second Amended Complaint; however, we grant Plaintiff limited leave to amend only to the extent necessary to recast that count as a First Amendment retaliation claim rather than a substantive due process claim;

41

c.      The Motion is further **GRANTED** to the extent it seeks

dismissal of Plaintiff's defamation claim set out in Count Five

of the Second Amended Complaint; however, we grant Plaintiff

limited leave to amend that count only to the extent necessary

to allege with particularity that Defendants Cavanaugh, Pichini,

and Henry leaked defamatory information to the public prior to

the audit report's official release;

d.      The Motion is **DENIED** in all other respects.

5.      Plaintiff **SHALL FILE** a Third Amended Complaint within fifteen

(15) days of the date of this Order.  If a Third Amended Complaint is

not filed by that date, Plaintiff's substantive due process claim set out

in Count Two and Plaintiff's defamation claim set out in Count Five

shall be dismissed with prejudice.

6.      The Clerk is directed to terminate Defendant Pennsylvania State

System of Higher Education on the docket.

7.      The Clerk is directed to terminate Defendant Board of Governors of

the Pennsylvania State System of Higher Education on the docket.

s/ John E Jones III
John E. Jones III
United States District Judge