## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **ANGELO ARMENTI, JR.** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | **No. 12-CV-02039** |
| **v.** | : | **(Judge John E. Jones, III)** |
| | : | |
| **RONALD TOMALIS,** *et al* | : | |
| | : | |
| **Defendants** | : | |

### NOTICE OF APPEAL

Notice is hereby given that Plaintiffs, Angelo Armenti, Jr., hereby appeal to the United States Court of Appeals for the Third Circuit from the attached Memorandum of Decision and Order of the Honorable John E. Jones, III dated November 2, 2016 granting Defendants' Motion for Summary Judgment a copy of which is attached hereto.

        _____/s/_____(ABE2825)
        Alan B. Epstein, Esquire (ABE2825)
        SPECTOR GADON & ROSEN
        1635 Market Street, Seventh Floor
        Seven Penn Center
        Philadelphia, PA  19103
        (215) 241-8888

        Attorneys for Plaintiff

Dated:  November 11, 2016

**CERTIFICATE OF SERVICE**

I, Alan B. Epstein, Esquire, do hereby certify that service of a true and correct copy of *Notice of Appeal* was made on this 11th day of November, 2016, to counsel named below via electronic transmission through ECF:

Samuel H. Simon, Esquire
Matthew J. Lautman, Esquire
HOUSTON HARBAUGH, P.C.
Three Gateway Center, 22nd Floor
401 Liberty Avenue
Pittsburgh, PA 15222

and

Cathleen Kelly Rebar
Jeanne Park Lee
STEWART BERNSTIEL REBAR & SMITH
470 Norristown Road, Suite 201
Blue Bell, PA 19422

and

Michael Ferguson, Esquire
PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION
2986 North Second Street
Harrisburg, PA 17110

By:_____/s/_____(ABE2825)
Alan B. Epstein, Esquire (ABE2825)
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19102
(215) 241-8888
(215) 241-8844

# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELO ARMENTI, JR., | : | 1:12-cv-2039 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| RON TOMALIS, *et. al.*, | : | |
| | : | |
| Defendants, | : | |

## <u>MEMORANDUM</u>

### November 2, 2016

Presently pending before the Court is Defendants Ron Tomalis, John Cavanaugh, Guido Pichini, Marie Conley and Ronald Henry's ("Defendants") motion for summary judgment. (the "Motion") (Doc. 149). Also pending is Defendants' motion to strike portions of Plaintiff Angelo Armenti, Jr.'s ("Armenti") response to the Defendants' statement of facts and portions of his counter-statement of facts. (Doc. 164). Armenti brings claims arising out of his termination as President of California University of Pennsylvania. ("Cal U"). Both motions have been fully briefed (Docs. 150, 156, 162, 165, 170, 171) and are therefore ripe for our review. For the reasons that follow, the motion to strike shall be denied, and the motion for summary judgment shall be granted in full.

## I.     MOTION TO STRIKE

We must first dispose of the Defendants' motion to strike so that we can outline the case background and analyze the motion for summary judgment in accordance with the admissions to material facts made by the parties. Defendants have moved to strike thirty of Armenti's responses to the Defendants' statement of facts for denying their allegations without providing record support for his denial. (Doc. 164, ¶ 1). Defendants ask the Court to deem the facts Armenti deficiently responded to as admitted. (*Id*., at ¶ 2). Further, Defendants move to strike thirty-eight paragraphs of Armenti's counter-statement of facts because: "(1) they are immaterial and irrelevant; (2) they are based on Armenti's conclusory affidavit, which simply restates the averments of Armenti's Third Amended Complaint; and/or (3) they are based on averments in Armenti's affidavit that conflict with Armenti's prior deposition testimony." (*Id*., at ¶ 3). Defendants did not provide responses to many of the paragraphs of Armenti's counter-statement of facts that they objected to. Armenti filed a revised response and a revised counter-statement of facts as a result of Defendants' motion. We consider these revised documents in place of the originals when analyzing the alleged deficiencies.

Starting with Armenti's responses to Defendants' statement of facts, the Court finds that paragraphs 1, 3, 12, 13, and 20 were styled as denials, but were in actuality admissions to the facts coupled with arguments for the proper inferences to derive from them. The purpose behind Rule 56.1 is to enable "the court to

identify contested facts expeditiously" in order to efficiently rule on motions for summary judgment, not to entertain argument that is properly left for the summary judgment briefing. *Pinegar v. Shinseki*, 2009 WL 1324125, at *1 (M.D. Pa. May 12, 2009)(Conner, C.J.). The Court will therefore treat those paragraphs as admissions.

Further, the Court agrees with Defendants that paragraphs 18, 21, and 23 represent denials without any support put forth by Armenti to justify refusing to admit the facts. We shall treat these as admissions as well. Finally, the Court finds that Armenti neither admitted nor denied paragraphs 37, 38, and 40[1], and therefore those paragraphs shall be deemed admitted as well.

Moving next to Armenti's counter-statement of facts, the Court notes that a counter-statement of facts submitted by the non-movant is "neither contemplated nor permitted by the Local Rules." *Barber v. Subway*, 131 F. Supp. 3d 321, 322, n.1 (M.D. Pa. 2015)(Conner, C.J.). We also agree with the Defendants that much of the information contained in Armenti's counter-statement of facts is immaterial to the disposition of the summary judgment motion, and thwarts the purpose of filing a statement of facts. Rather than allowing the Court to "identify contested facts expeditiously," we had to sift through Armenti's submissions searching for material disputes and ascertain whether those facts were supported by the record.

---

[1] Paragraph 40 appears to be an inadvertent repetition of paragraph 37 by the Defendants.

*Pinegar*, 2009 WL at *1. Instead of parsing through each fact put forth by Armenti and deciding whether it should be stricken for immateriality or lack of support, the Court will deny the motion to strike, with the caveat that we will only consider those facts already admitted by the Defendants. We find that this ruling has no impact on our summary judgment analysis.

## II.    BACKGROUND

Plaintiff Angelo Armenti, Jr., Ph.D., served as President of Cal U from 1992 until 2012. (Doc. 158, p. 16). The individual Defendants are employees of the Pennsylvania State System of Education ("PASSHE"), the public corporation and government instrumentality that governs Pennsylvania's fourteen public universities. (Doc. 151, ¶ 1) (Doc. 158, p. 23). John Cavanaugh ("Cavanaugh") is the former Chancellor of PASSHE. (Doc. 151, at ¶ 2). Ron Tomalis is the former Secretary of Education of PASSHE. (*Id*., at ¶ 3). Guido Pichini is the Chair of the PASSHE Board of Governors. (*Id*., at ¶ 4). Ronald Henry is a member of the PASSHE Board and the former Chairman of the Audit Committee. (*Id*., at ¶ 5). Marie Conley is the former Vice-Chair of the PASSHE Board. (*Id*., at ¶ 6).

PASSHE University presidents are reappointed to continue serving in that capacity by a vote of the Board. (*Id*., at ¶ 46). This lawsuit arises out of the Board's unanimous vote to ratify Armenti's termination as President on May 9, 2012. (Doc. 151, ¶¶ 22, 23). Armenti alleges that this decision was made in response to his

expression of views not supported by PASSHE and in retaliation for a complaint

he submitted against Cavanaugh.

By way of background, Armenti is "an outspoken critic on what he

considered an unmistakable legislative trend toward the rapid privatization of

public higher education." (Doc. 158, p. 29). To that end, has Armenti published

opinions in writing or by way of presentations that were "sharply critical of some

of PASSHE's policy decisions." (*Id*., at 30).

On October 6, 2011, the Board adopted a plan "contemplated and discussed"

by Armenti to furlough ten Cal U employees in response to expected budgetary

constraints. (*Id.*, at pp. 33). Armenti announced the furlough plan at the Cal U

Faculty Convocation on January 24, 2012. (*Id*., at p. 34). On February 7, 2012, a

local newspaper published an article about the furlough plan alongside of a story

regarding the Governor's recently announced budget cut plans, which allegedly

caused the perception that the two were related to one another, which could cause

some political strife. (*Id*.). On February 8, 2012, Cavanaugh emailed Armenti

advising that "after consultation with the Board, I am verifying that you are to take

no personnel action without explicit approval from me or my staff until further

notice." (*Id*., at p. 36). This directive was later determined to exceed Cavanaugh's

authority. (Doc. 163, ¶ 77).

On February 7, 2012, PASSHE sent a team of three auditors and a supervisor to Cal U to conduct an investigation regarding allegations of fiscal improprieties. (Doc. 158, p. 37). The Defendants maintain that this investigation was prompted by one signed and eight anonymous fiscal complaints. (*Id*.). The single signed letter was authored by a former employee who Armenti had fired. (*Id*., at p. 8). The investigation was summarized by a report issued March 20, 2012. (Doc. 151, ¶ 9). The report does not include any finding that Armenti engaged in illegal behavior; it does, however, restate the contents of the signed fiscal complaint that accused the Cal U administration of improper fiscal activity, including money laundering. (*Id*., at ¶¶ 13, 14).

On March 21, 2012, Cavanaugh prepared an annual evaluation of Armenti and recommended renewal of his employment contract, although Armenti was not aware of this. (Doc. 158, p. 39). On March 22, 2012, Armenti submitted a formal complaint to PASSHE, alleging that Cavanaugh "had failed to properly carry out the duties of his office in accordance with the controlling legislation and thereby affect[ed] the rights of the students attending the institutions of higher education under his control and plac[ed] the institutions themselves in financial jeopardy." (*Id.*, p. 41). On March 23, 2012, Armenti met with PASSHE chief counsel Leo Pandeladis, Defendant Pichini, and Defendant Conley to discuss his complaints

against Cavanaugh. (*Id.*, at p. 43). In response, Cavanaugh and Pandeladis appointed a special investigator to review Armenti's complaints. (*Id.*, at 43-44).

Each of the Defendants except for Cavanaugh attended a Board meeting on May 9, 2012. (*Id.*, at p. 43). Thereafter, on May 16, 2012, Defendant Pichini terminated Armenti's employment. (Doc. 151, ¶ 19). On May 25, 2012, the Board, including all of the individual defendants except for Cavanaugh, unanimously voted to ratify the termination of Armenti. (*Id.*, at ¶¶ 21-23). Defendant Pichini sent a letter to Armenti on June 1, 2012 to confirm that he was terminated "for cause." (Doc. 158, p. 45).

The day after Armenti's termination, Dean Weber, author of the investigation report, forwarded his final report to another individual, at which time the report became a public document open to request and review. (Doc. 158, p. 44). The press published articles that linked Armenti's termination with the audit report, which as aforementioned contained the fiscal complaint allegations. (Doc. 158, ex. 34).

Armenti initiated this action by filing his original complaint on October 10, 2012. (Doc. 1). He filed a first amended complaint on January 11, 2013. (Doc. 48). In response to motions to dismiss filed by the Defendants, Armenti was granted leave to file a second amended complaint on April 14, 2013. (Doc. 67). By Order

dated October 2, 2013, we granted and denied multiple motions to dismiss, prompting Armenti to file a third amended complaint (Doc. 94) which remains the operative complaint in this matter. We denied Defendants' motion to dismiss the third amended complaint by Order dated March 17, 2014. (Doc. 112). On January 15, 2015, we granted Defendants' motion for partial judgment on the pleadings. (Doc. 129).

Three counts remain against all the Defendants, and one count remains against Defendants Pichini and Conley. On July 1, 2016, the Defendants filed a motion for summary judgment on all counts. (Doc. 149). The Motion has been fully briefed (Docs. 150, 156, 162) and is therefore ripe for our review.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not

evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial.  *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## IV.   DISCUSSION

Defendants have moved for summary judgment on all four of the remaining counts. Count I is against all defendants for First Amendment retaliation in violation of 42 U.S.C. § 1983. Count II is against all defendants for a violation of due process rights under 42 U.S.C. § 1983, premised on the Defendants' alleged failure to provide a name-clearing hearing to Armenti. Count III is against all defendants for civil conspiracy to violate his constitutional rights. Finally, Count IV is against Defendants Pichini and Conley for an alleged violation of the Pennsylvania Whistleblower Law, codified at 43 P.S. § 1424(b). We will discuss each count in turn.

### A. Count I- First Amendment Retaliation

Armenti alleges that the Defendants terminated his employ as President of Cal U in response to his public commentary that was critical of PASSHE policies. (Doc. 94, ¶¶ 127-132). Defendants move for summary judgment on two bases: first, Armenti was terminated by a unanimous vote of the Board, and therefore, even if the Defendants had retaliatory reasons in voting to terminate him, they cannot be held liable. Relatedly, Defendant Cavanaugh was not a voting member at all so he cannot be held liable either way. Second, Defendants argue that there is no evidence of actual retaliation against Armenti. As a threshold matter, we find that Armenti has offered no evidence that Cavanaugh voted for his termination,

and therefore, summary judgment will be granted in Cavanaugh's favor on Count I.

To prevail on a First Amendment retaliation claim, a "plaintiff must show '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Zimmerlink v. Zapotsky*, 539 F. App'x 45, 48 (3d Cir. 2013) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir.2006)).

In keeping with these elements, Armenti alleges that he exercised constitutionally protected conduct when he spoke critically of PASSHE policies through presentations and written opinions, that his termination was a retaliatory action, and that his speech was a substantial factor in the Defendants' votes to terminate his presidency. (Doc. 94, ¶¶ 127-132). For purposes of this analysis, we can assume that the first two elements are met because Armenti's claim necessarily fails to establish causation.

Defendants relied on *Watson v. Borough of Susquehanna*, 532 Fed.App'x 233 (3d Cir. 2013) for the proposition that a plaintiff cannot establish causation for First Amendment retaliation against an individual defendant where "less than a majority of the decision-making body acted for an impermissible retaliatory reason." *Watson*, 532 Fed.App'x at 236. There, the Third Circuit noted that,

because an employer can defeat a retaliation claim by establishing "that it would have taken the adverse employment action regardless of whether the employee had engaged in protected conduct," *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1996), claims against individual defendants must fail if a majority vote to terminate would have been reached absent the accused retaliators' votes anyway. *Watson*, 532 Fed.App'x at 236.

Armenti countered this argument by asserting that *Watson* is distinguishable because a jury resolved factual issues in that case and there was an expressed legitimate reason to terminate the plaintiff in that matter. (Doc. 159, p. 22). Because no reason for his termination was ever expressed, Armenti argues "it simply cannot be said that the decision to terminate him was not influenced by broadly disseminated statements falsely implying impropriety and the counsels [sic] awareness of the charges Dr. Armenti brought against Chancellor Cavanaugh." (*Id.*).

The Court finds three problems with this argument. First, Armenti is now suggesting that the constitutionally protected speech that allegedly prompted his termination was his complaint against the Chancellor or the investigation report, rather than his public opinions about PASSHE policy. Armenti will have a much more difficult time alleging that his complaint about the Chancellor constituted public First Amendment speech, and the investigation report was not Armenti's

12

speech at all. Second, Armenti is suggesting that the burden is on the Defendants to show that they had a proper reason to terminate his presidency, as opposed to the proper burden of Armenti, as Plaintiff, to show that his speech was a substantial factor in his termination. The burden does not shift to the Defendants until Armenti makes this demonstration. *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009).

Finally, and most importantly here, the factual distinction between *Watson* and Armenti's case is immaterial as it does not change the precedential legal holding that an individual defendant cannot be held liable where less than a majority of the board acted for impermissible reasons. The Court can go so far as to assume that each individual Defendant that voted to terminate Armenti was acting out of retaliation for Armenti's constitutionally protected speech, and Armenti still could not establish causation. The Board was unanimous in its decision to ratify the termination of Armenti. (Doc. 151, ¶¶ 21-23). Without the four Defendants who were present, the motion to ratify the termination would have still passed. Armenti cannot establish causation as a matter of law and therefore we shall grant Defendants' Motion for summary judgment on Count I.

## B. Count II- Failure to Provide a Name-Clearing Hearing

In Count II, Armenti alleges that the Defendants deprived him of due process by seriously damaging his reputation and failing to provide him with a name-clearing hearing to remedy that. (Doc. 94, ¶¶ 133-139). The Supreme Court

has recognized that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). Where these procedural safeguards are not given, a plaintiff may bring "a due process claim for deprivation of a liberty interest in reputation." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). To prevail on this claim, a plaintiff "must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Id*. (emphasis in original).

The alleged stigmatizing statements at issue are those where the investigation report republishes the fiscal complaint allegations that prompted the beginning of the audit investigation. (Doc. 159, p. 25). In order to satisfy the "stigma" prong of the test, the plaintiff must demonstrate "that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Hill*, 455 F.3d at 236. (internal citations omitted).

Defendants argue that Armenti has failed to satisfy the stigma prong in both regards. First, Defendants argue that Armenti has not adduced any evidence to indicate that any of the Defendants *made* the statements at all. (Doc. 150, p. 38). The alleged stigmatizing statements come from the investigation report, and Armenti has not shown that any of the defendants were responsible for the contents

or publication of that report. Second, even if the Defendants were responsible for the report, Defendants argue that the statements are not false. (*Id.*, at p. 45).

In response, Armenti offers just two sentences that conclusively state that the republished fiscal complaint published in the report satisfies the "stigma" prong of the analysis before going on to discuss the "plus" prong at great length. (Doc. 159, p. 25). He has pointed to no evidence to indicate that the Defendants were responsible for the statements in the report or that they were false. The report itself makes clear that the allegations of money laundering and other fiscal mishandling come from a complaint, and the report does not include any finding that Armenti engaged in money laundering or illegal behavior. (*See* Doc. 150, ex. 19; Doc. 151, ¶ 13). Due to the complete lack of evidence that the individual Defendants were responsible for the statements in the report or that the statements were false, the Court must grant Defendants' motion for summary judgment on Count II.

### C. Count III- Civil Conspiracy to Violate Constitutional Rights

Count III alleges that the Defendants "engaged in a civil conspiracy to defame plaintiff and impair or circumvent his constitutional rights and statutory protections." (Doc. 94, ¶ 141). "In order to demonstrate the existence of a conspiracy under § 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of

law.'" *Woods v. Grant*, 381 F. App'x 144, 147 (3d Cir. 2010) (quoting *Parkway Garage, Inc. v. City of Phila*., 5 F.3d 685, 700 (3d Cir.1993)).

Defendants move for summary judgment on this count "because there is no evidence whatsoever that any of the Defendants ever reached any agreement or acted in concert to deprive Armenti of any constitutional rights." Armenti responds by reminding the Court that he only has to "demonstrate with specificity the circumstances of the alleged conspiracy, such as those addressing the period of conspiracy, object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." (Doc. 159, p. 36). He then goes on to provide just one scant paragraph in an effort to show facts that would defeat Defendants' motion:

> "While there are no direct admissions from the named Defendants herein that they conspired to violate Dr. Armenti's rights, direct evidence of a conspiracy to do so is simply not required. The evidence adduced during discovery as supplemented by Dr. Armenti's Declaration suggests that a cadre of officials were intent on establishing a basis to terminate Dr. Armenti. The talk of a "plan" to deal with him raises the specter of wrongful actions and provides a sufficient basis for a jury to reasonably infer that the actions taken against him were the result of an unlawful conspiracy to which each of the Defendants contributed."

(*Id*., at p. 36-37). This conclusory paragraph does not include any record cites and only refers to one piece of evidence- an email from Cavanaugh to Conley where he states they have a "plan" when discussing the possibility of stopping the furlough plan. (Doc. 158, ex. 17). This is insufficient to defeat a motion for

summary judgment. Armenti recognized that he had the burden to provide *with specificity* the circumstances surrounding the alleged conspiracy, and all he has pointed to is a reference to a "plan" by one defendant to another. The Supreme Court has held that "in the face of the defendant's properly supported motion for summary judgment, the plaintiff [can]not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 289 (1968)).

Armenti has not provided evidence from which a reasonable jury could find that the Defendants came to any sort of agreement, much less that the nature of the agreement was to violate his constitutional rights. For those reasons, we shall grant Defendants' Motion for summary judgment on Count III.

### D. Count IV- Violation of Pennsylvania Whistleblower Law

Finally, in Count IV, Armenti alleges that Defendants Pichini and Conley terminated him in retaliation for his formal complaint against Cavanaugh in violation of the Pennsylvania Whistleblower Law. (Doc. 94, ¶¶ 143-152). To prevail on a claim under the Pennsylvania Whistleblower Law, the plaintiff "must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith ... an instance of wrongdoing or waste to the employer or an

17

appropriate authority." 43. P.S. § 1423(a). "Wrongdoing" as defined by the

Whistleblower Law is a "violation which is not of a merely technical or minimal

nature of a Federal or State statute or regulation of a political subdivision

ordinance or regulation or of a code of conduct or ethics designed to protect the

interest of the public or employer." 43 P.S. § 1422. The plaintiff "must also present

some evidence of a causal connection between his or her report and the alleged

retaliation." *Johnson v. Res. for Human Dev., Inc.*, 789 F. Supp. 2d 595, 601 (E.D.

Pa. 2011). If a plaintiff makes this showing, the burden shifts to the employer. *Id.*

The employer can defeat a whistleblower claim by showing that the adverse action

occurred for non-pretextual reasons. *Id.*

Defendants move for summary judgment on this count for three reasons.

First, Defendants argue that Armenti did not report any "wrongdoing" or "waste"

in his complaint against Cavanaugh, as required to invoke the Whistleblower Law.

(Doc. 150, p. 52). Second, Defendants argue that Armenti cannot show causation

because of the unanimous vote of the Board. (*Id.*). Third, Defendants argue that

Armenti submitted his complaint against Cavanaugh for personal reasons, which

would prevent applicability of the Whistleblower Law. (*Id.*).

Armenti responds to Defendants' third argument, that his complaint was

motivated by personal reasons and thus outside the bounds of the Whistleblower

Law, by arguing that this is a fact question best resolved for the jury. (*Id.*, at p. 40). The Court agrees with this characterization.

However, Armenti responds to Defendants' causation argument by again stating that he was never given a reason for his discharge and thus a jury could reasonably find that it was done in retaliation for his complaint. (Doc. 159, p. 39). Once again, this improperly shifts the initial burden to the Defendants when it is Armenti's duty as Plaintiff to point to facts of record that would support his claim. Armenti has offered no argument to refute Defendants' claim that causation cannot exist because the Board would have terminated Armenti without the votes of Defendants Pichini and Conley.

Further, in response to Defendants' argument that Armenti never accused Cavanaugh of "wrongdoing" or "waste" to implicate the Whistleblower Law altogether, Armenti offers simply a conclusory statement that he has done so:

> "Further, contrary to the assertions that the critical writings and presentations and the Formal Complaint authored by Dr. Armeti did not report unlawful wrongdoing as defined in the act, both Dr. Armeti writings over the years and his Formal Complaint against the PASSHE Chancellor were writings that asserted violations, which were "not of a merely technical or minimal nature of a federal or state statute or regulation … or of a code of conduct or ethic designed to protect the interest of the public…" 43 P.S. § 1422."

(*Id.*, at pp. 39-40). Instead of pointing to Armenti's allegations against Cavanaugh in his complaint or writings and demonstrating how it qualifies as a "wrongdoing" under the Whistleblower Law, Armenti simply quotes the law and

conclusively states that he has satisfied it. Armenti has not referred to any specific statute, law, or code of conduct or ethics to show that he complained of a violation within the meaning of the Whistleblower Law, much less how that specific statue, law, or code of conduct was designed to protect the public. Without meeting this threshold, Armenti's complaint of Cavanaugh cannot invoke the Whistleblower law at all. *See Suekenik v. Tonwship of Elizabeth*, 131 A3d 550, 555 (Pa.Cmwlth. 2016); *Riggio v. Burns*, 711 A.2d 497, 501-502 (PA.Super. 1998).

Because Armenti has not shown that he reported "wrongdoing" within the meaning of the Whistleblower Law, and even if he had, he cannot show causation because the Board would have terminated his presidency without Defendants Pichini and Conley's votes, the Court must grant Defendants' Motion for summary judgment on this count.

## V.     CONCLUSION

For the foregoing reasons, we shall deny Defendants motion to strike (Doc. 164) and grant Defendants' motion for summary judgment. (Doc. 149). A separate order shall issue in accordance with this ruling.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELO ARMENTI, JR., | : | 1:12-cv-2039 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| RON TOMALIS, *et. al.*, | : | |
| | : | |
| Defendants, | : | |

## <u>ORDER</u>

### November 2, 2016

Presently before the Court is Defendants' motion to strike (Doc. 164) and Defendants' motion for summary judgment. (Doc. 149). In conformity with the Memorandum issued on today's date, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to strike (Doc. 164) is **DENIED**.

2. Defendants' motion for summary judgment (Doc. 149) is **GRANTED**.

3. The Clerk of the Court **SHALL CLOSE** the file on this case.


<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge